LEO WALTON & MILFORD FULLER v. STATE OF ARKANSAS

5353                                         431 S.W. 2d 462

Opinion Delivered September 9, 1968

*Donald J. Adams* for appellant (Walton).

*Moore & Brockman* for appellant (Fuller).

*Joe Purcell,* Atty. Gen.; *Don Langston,* Asst. Atty. Gen. for appellee.

JOHN A. FOGLEMAN, Justice.    The basic question raised by appellants is that of validity of a search and seizure.    It was properly raised in the trial court by motions to suppress evidence and objections to testimony and evidence, all of which were denied and overruled.    Although it appears that several charges were filed against appellants Walton and Fuller as a result of the investigation of which this search was a part, this appeal is taken from a judgment of conviction of appellants of the crime of possessing a Zenith color type television and a Zenith stereo type record player, alleged to have been stolen from one Chuck J. Carter, proprietor of Carter-Binley Appliance Company of Seymour, Missouri.

The investigation was commenced by Sheriff Mickey Owen of Greene County, Missouri, who came to Harrison in pursuit of a large quantity of men's clothing and television sets said to have been stolen from business establishments in his county.    After he arrived in Harrison on the morning of September 7, 1967, he was accompanied to the office of the municipal judge by the prosecuting attorney of the 14th judicial district, the sheriff of Boone County, Sgt. Earl Rife of the Criminal Investigation Division of the Arkansas State Police, and the president of a clothing store in Springfield, Missouri, from which it was charged that a large quantity of merchandise had been stolen.    A hearing was held to determine probable cause for the issuance of a search warrant.    A draft of an addidavit for a search warrant, which Sheriff Owen was prepared to execute, was presented to the judge and was in the following form (omitting formal parts):

"Information has been presented to me, under oath, by George L. Hall, President of Williams Clothing Store, Springfield, Mo., that said store was burglarized on September 4, 1967 and 400 mens suits, three top coats, ten sport coats, five pants, eight three-piece combination sport suits of the approximate cost to us of $20,000.00; and further information has been presented to me by a confidential informant whose information has proved reliable before, and whom I believe to be reliable, and I believe this information given by said informant now is reliable and that I do in truth suspect that such property is concealed in the frame dwelling house, barns, tool sheds and other out buildings located on a forty acre tract of land owned by Ed Willis and Golden Rich Distributing Co., Inc., on the Cottonwood Road, Boone County, described as the SW NW 4-19-20, as recorded on deed appearing at book 96, page 446, said lands being used by Ed Willis and others at 5 miles North on Cottonwood Road in the State and County aforesaid, and pray a warrant from said Court to search said premises, dwelling house, barns, garages, outbuildings and automobiles situated on said lands and to seizè any and all of the above property found thereon."

Inquiry was conducted to determine probable cause for the issuance of the warrant, but the judge did not administer any oath to any witness. The hearing consisted of a reading of the affidavit by the judge, a statement by the president of the concern that a list attached to the affidavit was a description of the merchandise lost by it and affirmative responses of Sheriff Owen to inquiries by the judge whether he had on previous occasions relied on the unnamed informer and whether success had been realized as a result of this reliance. The judge also asked why the officers thought the property sought would be at the place to be searched by the time they got there and was told that the place was

"staked out." Sheriff Owen then signed the affidavit an oath was administered to him and the following warrant was issued (omitting formal parts):

"Information has been presented to this Court by Mickey Owen, Sheriff, Greene County, Mo. that the Williams Clothing Store, Springfield, Mo. was on the September 4, 1967 burglarized and robbed of approximately 400 men suits, 3 top coats, 10 sport shirts, 5 pants, 8 3-piece suits as further described on the attached list of stolen goods; and that he has reasonable cause to believe that said stolen goods along with recently stolen TV sets as per the attached list are stored in a dwelling house and outbuildings located on the SW NW 4-19-20 in Boone County, said property being owned by Ed Willis and Golden Rich Distributing Co., Inc., a corporation. That he has reason to believe that said property is being wrongfully and unlawfully concealed by the said Ed Willis and Golden Rich Distributing Co., Inc., some place on the premises of the above described property in Boone County, Arkansas said premises being now occupied by the said Ed Willis and Golden Rich Distributing Co., Inc., a corporation, and he requests that a Search Warrant be issued authorizing and directing that a search be made of said premises for said property. And it appearing to the Judge of the Boone County Municipal Court that there are reasonable grounds to believe that said property is being wrongfully and unlawfully concealed as aforesaid, you are hereby directed to search the premises aforedescribed in the day time for such property, and if the same be found that you take said property into custody and hold the same in your custody for further orders of this Court; and that you make due return of this writ to this Court."

About three hours later the officers returned to obtain a warrant for a search of other premises. Upon inquiry by the municipal judge, without administration

of any oath, they reported that their initial search resulted in the discovery of some of the merchandise sought and Sheriff Owen stated that the informant mentioned in the affidavit he then proposed to sign was the same as the one from whom he obtained the information upon which the first search was based. Thereupon the affidavit was signed by Sheriff Owen and the search warrant issued. This affidavit was as follows:

"I, Mickey Owen, Sheriff of Greene County, Missouri, do solemnly swear that: on September 1, 1967, the Carter Hillen Appliance Co., Springfield, Missouri, was burglarized and 22 TV sets were stolen, as per the attached list setting forth the set and each serial number and description; that information has been presented to me by a confidential informant, which information I believe to be reliable; and that the information given to me in the past by said informant has been reliable; the information being that said TV sets were brought to Boone County, Arkansas, and that I do in truth suspect that such property is concealed in the business place of the Golden Rich Distributing Co., Inc., a corporation, on the Clarence Hudson property located on Highway 65N in Harrison, Arkansas occupied by Golden Rich Distributing Co. Inc. in the State and County aforesaid, and pray a warrant from said Court to search said property, including the business place, warehouses, storagerooms, garages, outhouses, automobiles, trucks and any other place of concealment located on said property, and to seize any of the said TV sets located therein."
The search warrant read (omitting formal parts):

"Information has been presented to this Court by Mickey Owen, Sheriff of Green County, Mo., that on September 1, 1967 the Carter Hillen Appliance Co., of Springfield, Mo. was burglarized and that 22 TV sets of the description and value as set forth on the attached list were stolen; That

he has reasonable grounds to believe, and upon probable cause does believe that said property was brought to Boone County and is now located on the Clarence Hudson property on Highway 65N in Harrison, Arkansas, in the buildings and other places of concealment located on said property occupied by Golden Rich Distributing Co., Inc. a corporation; That he has reason to believe that said property is being wrongfully and unlawfully concealed by one Golden Rich Distributing Co., Inc. and its officers and agents some place on the premises of the above described lands and the buildings and trucks thereon in Harrison, Boone County, Arkansas said premises being now occupied by the said Golden Rich Distributing Co., Inc., a corporation, and its officers and he requests that a Search Warrant be issued authorizing and directing that a search be made of said premises for said property. And it appearing to the Judge of the Boone County Municipal Court that there are reasonable grounds to believe that said property is being wrongfully and unlawfully concealed as aforesaid, you are hereby directed to search the premises aforedescribed in the day time for such property, and if the same be found that you take said property into custody and hold the same in your custody for further orders of this Court; and that you make due return of this writ to this Court.''

The rule requiring exclusion of evidence obtained as a result of a search and seizure violating the Fourth Amendment to the Constitution of the United States has been held applicable (via the Fourteenth Amendment) to the states by the Supreme Court of the United States in *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). That court has also held that the standards of ''reasonableness'' for obtaining a search warrant are the same under both the Fourth and Fourteenth Amendments, saying that the latter imposes all the proscriptions of the former as to searches and

seizures on the states. *Ker* v. *California,* 374 U.S. 23, 83 S. Ct. 1623, 10 L, Ed. 2d 726 (1963); *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964). In determining probable cause for the issuance of a search warrant, the magistrate must judge for himself the persuasiveness of the facts relied upon by a complaining officer and may not accept a complainant's conclusions without question. *Giordenello* v. *United States,* 357 U.S. 480, 78 S. Ct. 1245, 2 L. Ed. 2d 1503 (1958); *Aguilar* v. *Texas, supra.* While an affidavit for a search warrant may be based upon personal observations of the affiant, it may also be based, in whole or in part, on hearsay information. When it is based upon hearsay, the magistrate must be informed of some of the underlying circumstances from which an informant concluded that the object of a proposed search was where he said it was. He must also be advised of some of the circumstances from which the officer concludes that the informer (whose indentity need not be then disclosed) is credible or his information reliable. An affidavit, which does not contain any affirmative allegation that affiant speaks with personal knowledge of the matters contained therein and also fails to show that information given by an unidentified source was not merely his suspicion, belief or conclusion, has been held not to show probable cause. *Aguilar* v. *Texas, supra.*

The use of oral testimony to support an affidavit for the issuance of a search warrant satisfies Fourth Amendment standards of reasonableness. *Miller* v. *Sigler,* 353 F. 2d 424 (8th Cir. 1965); *Gillespie* v. *United States,* 368 F. 2d 1 (8th Cir. 1966). Under the Fourth Amendment, however, a magistrate may not properly issue a search warrant unless he can find probable cause from facts or circumstances presented to him under oath or affirmation. Mere affirmance of belief or suspicion is not sufficient. *Nathanson* v. *United States,* 290 U.S. 41, 54 S. Ct. 11, 78 L. Ed. 159 (1933); *Aguilar* v. *Texas, supra.* Even if the additional information given the municipal judge in this case had been under oath

and included in the affidavits, it did not supply any of the underlying circumstances supporting the statements which were contained in the affidavits. We are unable to find statements of underlying facts and circumstances meeting the tests required by the cited decisions of the United States Supreme Court which justified issuance of either search warrant.

The success of the search will not validate it since it was unlawful at its inception. *Wong Sun* v. *United States,* 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed 2d 441 (1963).

In view of this finding, it is unnecessary for us to consider other attacks made upon the search warrants. Since neither the television set nor the record player described in the charge in this case was the subject of either search, however, it remains for us to determine the effect of the invalidity of these searches upon this case. In doing so, we must apply the doctrine of the "Fruit of the Poisonous Tree." Under this doctrine, both the indirect and direct products of an unlawful search must be excluded from evidence. *Wong Sun* v. *United States, supra.* Even this doctrine does not require that all evidence be excluded as "fruit of the poisonous tree" simply because it would not have come to light but for illegal actions of officers. The question is whether the evidence to which objection is made was obtained by exploitation of the illegal action or by means sufficiently distinguishable to be purged of the taint of illegality. *Wong Sun* v. *United States, supra.* The burden is on the accused to convince the court that evidence is inadmissible under this doctrine. *Nardone* v. *United States,* 308 U.S. 338, 60 S. Ct. 266, 84 L. Ed. 307 (1939).

It is undisputed that the particular property on which the present charge is based was not described in enther search warrant. When the officers arrived at the named premises for the second search, the warrant was read and then given to Walton. None of the offi-

cers asked either of the appellants any questions. In spite of this, Walton, in the presence of Fuller, voluntarily advised Sheriff Hickman of Boone County and Sgt. Rife that there was a quantity of other property besides the television sets for which the search was being conducted, and that he wanted to show them where it was. He told them that he had certain suits of clothing and the television set and record player upstairs in his living quarters. He said he had bought the television set and record player from Fuller and had gotten the television from among those downstairs. When the officers inspected (at the invitation of Walton) the serial number on the television set did not match any number on the list they had. After a discussion between the officers and Walton, it was agreed that the officers would not take these items, but could come back at a later date and look them over. Later, on September 12th, Sgt. Rife and Carter, the alleged owner of the property, went to the premises, after a telephone call by Sheriff Hickman to Walton, and were admitted by the latter for the purpose of checking serial numbers. The serial number on the television set corresponded with a number on a list of property Carter alleged had been stolen from him. When they were unable to check the serial number on the record player because they had no screwdriver with which to remove the back of the instrument, Walton told them that it came in at the same time the television set did and to go ahead and take it because he knew that it belonged in "that stuff." Under these circumstances, the property found in the Walton living quarters and his statements about them were not come about through exploitation of an illegal search. Walton also showed the officers other property which was not described in the search warrant then being executed. We find that there was a definite waiver of the requirement of a search warrant for any of this property.

For the reasons above set out, the television set and record player were admissable in evidence. How-

ever, neither the items discovered as a result of the two searches (except for those items not the object of the search, about which Walton voluntarily informed the officers) nor testimony relating thereto was admissible in evidence. Thus, identification of property which was inadmissible should have been excluded by the trial court as "fruit of the poisonous tree," even though it was offered only for the purpose of showing intent and a course of conduct. Furthermore, statements of both Walton and Fuller made in the prosecuting attorney's office, except for those portions relating particularly to property not listed in the second search warrant about which Walton volunteered information, were inadmissible as "fruit of the poisonous tree." The erroneous admission of such testimony and evidence certainly cannot be said to have been harmless.

Although objection was made to the statements made in the prosecuting attorney's office as being inadmissible under the rule announced in *Miranda* v. *Arizona*, 384 U.S. 448, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), we find adequate evidence to support the trial judge's finding that the warnings required by that rule were given, and that the statements were voluntary and made under waiver of the rights enumerated in the above case. Neither Walton nor Fuller was in custody at that time on any charge. Before interrogation, both were advised of their rights as to the giving of statements. There is nothing to indicate that either was not intelligent enough to understand the statement of his rights. Nor does it appear that either was not conscious that he was waiving them in answering questions. Walton actually signed a written waiver, on which his constitutional privilege against self incrimination and right to counsel are clearly and fully listed. There is no indication that this was not a free and voluntary act on his part. While Fuller did not sign the waiver, there is testimony that an identical statement of his rights was read to and by him before any interrogation, after which he expressed his willingness to answer ques-

tions. It was only after the interrogation was virtually concluded that he was asked to sign a written waiver of these rights, and he then stated that he wanted a lawyer "if it got down to where he had to sign something." In addition to the warnings at the time of the interrogation of Walton and Fuller in the prosecuting attorney's office, the evidence that both were advised of these rights at the time of the search is convincing.

While the State contends that Fuller has no standing to contest the validity of the second search, we feel that this argument is without merit under the circumstances of this case. It would be anomalous to say that one charged with possession of stolen property because of its presence on certain premises could not contest a search of these premises without showing his interest therein or his right to possession, occupancy or use thereof. See *Jones* v. *United States*, 362 U.S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697 (1960).

In view of the disposition we make of this case. other questions raised by the appellants need not be determined.

The judgment is reversed and the cause remanded for a new trial.