Ersáleen HALL v. STATE of Arkansas

CR 75-222                                        537 S.W. 2d 155

Opinion delivered June 1, 1976

*Hollingsworth & Crutcher, P.A.* and *Walker, Kaplan & Mays, P.A.*, for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Jack T. Lassiter,* Asst. Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. The appellant was charged with the first degree murder in the shooting of her former husband, Charles Hall. The jury found her guilty of voluntary manslaughter and imposed a seven-year sentence. The principal points for reversal relate to the admissibility of the

defendant's confession and the manner in which the panel of petit jurors was selected.

In the course of an argument the defendant shot Hall twice at her home in Newport. She immediately telephoned for the police and an ambulance. When the police arrived she went outside and told them that she had shot Hall and hoped that he wasn't dead. She was arrested and taken to police headquarters, where she was questioned about an hour and a half later, after having been warned of her rights. The interview was taped and transcribed. About midway through the interview, when the interrogating officer asked her to calm down, she said: "I don't want to talk about it. Please don't make me. Lord have mercy." The rest of the confession was not admitted in evidence, the State conceding that it was not to be admitted.

Upon the testimony as a whole we cannot say that the trial judge's finding that the confession was voluntary is against the weight of the evidence. *Degler* v. *State,* 257 Ark. 388, 517 S.W. 2d 515 (1974). It is apparent and understandable that the appellant was nervous and upset when she was questioned, but her responses seem reasonably clear and coherent. That the interrogation took place some two hours after the shooting indicates that she had had an opportunity to regain her composure. Counsel argue that she had not been told that she was charged with first degree murder, but she undoubtedly knew why she was being questioned. The exact charge that would ultimately be made could hardly be determined until the investigation was complete and the information had been submitted to the prosecuting attorney. The trial judge had the advantage of hearing the testimony as it was given. We do not find his admission of the confession to be erroneous.

With regard to the exclusion of blacks from the jury panel, a prima facie case of discrimination was made, so that the State should have been required to go forward with rebutting evidence. Hence the court erred in denying the motion to quash the jury panel, without requiring the State to submit proof.

The proof is not as complete as it might be, but that is

hardly the fault of defense counsel. A few weeks before trial the judge directed that all motions be filed by May 12, the date of the pretrial conference. No motion attacking the composition of the jury was filed within the time allowed. If the record stopped at that point it might be said that a motion filed later on came too late. The judge's policy of requiring pretrial motions to be made in advance, so that jurors are not kept waiting while preliminary testimony is being heard, is not subject to criticism.

It happened, however, that it became necessary to draw additional jurors' names from the jury wheel after the May 12 deadline. Those names were not supplied to defense counsel until the Friday before the trial began on Monday. In those circumstances counsel were not at fault in being able to offer only somewhat limited proof.

Even so, a prima facie case of discrimination was made. It was stipulated that one fourth of the county population was black and that there were only 3 black persons upon the panel of 85 jurors. (The percentage of eligible black registered voters could not be shown, as the registration of voters does not indicate the race of the registrants.)

A prima facie case of discrimination is made by a showing (a) that th re is a substantial disparity, such as the difference between a 25% black population and a 3½% representation on the panel, as here, and (b) that there are positive indicia of discrimination or that the selection procedure provides an opportunity for discrimination. *Sanford v. Hutto,* 394 F. Supp. 1278 (E.D. Ark., 1975), affirmed, 523 F. 2d 1383 (8th Cir., 1975).

Here point (b) was sufficiently established. Our jury wheel statute does not require a random process of selection; instead, the selection is committed to the discretion of the jury commissioners. We do not know what further proof might have shown, for the State was not required to go forward with the evidence. It was shown, however, that when the additional names were drawn from the jury wheel the trial judge, owing to the season of the year, excused all the farmers (some 25 or 30) without requiring them even to appear and ask to be excused. That practice cannot be ap-

proved, for it is a deliberate and systematic exclusion of a large class of eligible jurors. It does not matter that this appellant is not a farmer or a resident of a rural area, for the Supreme Court has held that anyone has standing to question a jury that does not meet constitutional standards, even though he is not a member of the race or group that is being made the subject of improper discrimination. *Peters* v. *Kiff,* 407 U.S. 493 (1972).

Counsel also questioned the trial court's practice of drawing names from the jury wheel in chambers rather than in the courtroom. The statute requires that, pursuant to an order made at least 15 days in advance, the jury wheel be unlocked and the names drawn "in open court." Ark. Stat. Ann. § 39-209 (Supp. 1975). The distinction between the courtroom and the judge's chambers cannot invariably and inflexibly be regarded as decisive. We know that many contested cases, especially those involving only a few witnesses, are tried in chambers. Such proceedings have frequently been held to take place in open court. *McCann* v. *Todd,* 201 La. 953, 10 So. 2d 769 (1942); *People* v. *Janoske,* 206 Misc. 155, 132 N.Y.S. 2d 186 (1954); *People ex rel. Walsh* v. *Warden of Sing Sing Prison,* 176 Misc. 627, 27 N.Y.S. 2d 273 (1941); see also *Suesemilch* v. *Suesemilch,* 43 Ill. App. 573 (1892); *Hobart* v. *Hobart,* 45 Iowa 501 (1877).

There is also the practical consideration that the courtroom may not be available, owing to the continuation of a trial in progress or to the use of the courtroom by the chancery or probate court. Certainly the better practice is for the names to be drawn in the courtroom. What the statute really contemplates, however, is that the drawing in every instance be open to the members of the public. If the drawing does take place outside the courtroom, precautions should be taken to avoid even the appearance of secrecy or of exclusion of the public.

On the merits it is argued that the proof is insufficient to support the verdict. This argument cannot be sustained. The defendant has admitted from the outset that she shot her former husband. There was other proof in addition to her confession. Upon the testimony it was for the jury to say whether the homicide was justifiable.

Other arguments for reversal are urged, but none of the asserted errors are apt to arise upon a new trial.

Reversed and remanded for a new trial.

FOGLEMAN, J., concurs in all of the opinion except the statement that a prima facie case of racial discrimination was made.