517 So.2d 1295 (1987)
Gregory Montecarlo JONES
v.
STATE of Mississippi.
No. DP-60.
Supreme Court of Mississippi.
January 28, 1987.
Rehearing Denied September 30, 1987.
*1297 J.W. Miller, Robert E. Farish, Biloxi, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Marvin L. White, Jr., Asst. Atty. Gen., and Amy D. Whitten, Sp. Asst. Atty. Gen., Jackson, Cono Caranna, Dist. Atty., Gulfport, for appellee.
En Banc.
ROY NOBLE LEE, Presiding Justice, for the Court:
Gregory Montecarlo Jones was first convicted of capital murder on May 28, 1981, and was sentenced to death. On November 28, 1984, this Court reversed the conviction because of the admission into evidence of a video-taped confession, or parts of it, after Jones had stated "I prefer not to speak to that." He was tried again in the Harrison County Circuit Court, found guilty on April 3, 1985, and for the second time, the death penalty was imposed.

Facts
Briefly, on the morning of January 21, 1981, officers of the Biloxi Police Department received a call to investigate a homicide at 629 Lameuse Street in Biloxi. There, the officers found Josie Jones, a 62-year-old female, lying dead on her living room floor. She had been fatally shot by three .22-caliber bullets. The rifle was on the floor near her body. The victim had lived at this address with one Alexis Kingston, who had suffered a stroke and was hospitalized. Montecarlo Jones was a boarder at the house and from the time Kingston suffered the stroke until January 19, 1981, he was the only occupant of the home other than Josie Jones.
The officers began an investigation, but were unable to find eye-witnesses or a suspect until they developed that Montecarlo Jones had lived in the home and had not been seen since January 19, 1981. Also, the pickup truck owned by the victim had been missing since that time. The Biloxi police learned that Jones was originally from Perry County, and they contacted the Perry County Sheriff's Office about 10:00 on the morning of January 21, 1981, and inquired whether those officers knew Montecarlo (Sonny) Jones. The police were informed that on the previous evening a pickup truck with a Harrison County license tag had been towed into New Augusta following the driver's arrest for driving under the influence of intoxicating liquor. The vehicle turned out to be the victim's truck and the driver was Montecarlo Jones. In due course, after waiving his Miranda rights, Jones admitted he was involved in the homicide, although contending that another person had done the actual killing.[1]

Law Questions
The appellant assigns fourteen (14) errors in the trial below, which will be discussed hereinafter.

I. THE COURT ERRED IN FINDING THAT APPELLANT WAS LAWFULLY ARRESTED.

II. THE COURT ERRED IN FINDING APPELLANT'S CONFESSIONS WERE FREELY AND VOLUNTARILY GIVEN.

V. THE COURT ERRED IN ALLOWING THE STATE TO AMEND THE INDICTMENT.
The three assignments above were covered in the first appeal and were decided adversely to the appellant. That decision constitutes the law of the case and the assignments are barred on the present appeal. Jones v. State, 461 So.2d 686, 694, 695, 697 (Miss. 1984); Irving v. State, 441 So.2d 846, 848 (Miss. 1983); Jordan v. State, 464 So.2d 475, 477 (Miss. 1985).

III. THE COURT ERRED IN PERMITTING THE STATE TO SYSTEMATICALLY EXCLUDE BLACK VENIREMEN BY PEREMPTORY CHALLENGE.

IV. THE COURT ERRED IN EXCUSING FOR CAUSE THOSE VENIREMEN WHO DID NOT BELIEVE IN CAPITAL PUNISHMENT.
*1298 Relating to III, appellant cites Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). However, he concedes that no objection was raised either during the trial or on the motion for new trial. Counsel's excuse for waiving the claim at trial is that under prior law he felt he would be unsuccessful on the point. That reason given is insufficient. Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); Young v. Herring, 777 F.2d 198 (5th Cir.1985) Sanders v. State, 479 So.2d 1097 (Miss. 1985); Barnette v. State, 478 So.2d 800 (Miss. 1985); Hines v. State, 472 So.2d 386 (Miss. 1985); Gray v. State, 472 So.2d 409 (Miss. 1985); Billiot v. State, 454 So.2d 445 (Miss. 1984).
Batson v. Kentucky, supra, required a defendant to show
1. That he is a member of a "cognizable" racial group;
2. That the prosecutor has exercised peremptory challenges toward the elimination of veniremen of his race; and
3. That facts and circumstances infer that the prosecutor used his peremptory challenges for the purpose of striking minorities.
476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87-88.
Appellant contends on IV that the court erred in excusing two jurors for cause, i.e., Cooksey and Hebert, under the Witherspoon test. Pertinent parts of the voir dire of those jurors follow:
BY THE COURT: All right. How about Capital Punishment now, you folks, you four up here. Do you have any conscientious scruples against it, Mr. Cooksey?
BY MR. COOKSEY: Yes, sir.
BY THE COURT: Huh?
BY MR. COOKSEY: Yes, sir.
BY THE COURT: You do?
BY MR. COOKSEY: I do.
BY THE COURT: You could not impose it, under any conditions?
BY MR. COOKSEY: No, sir.
BY THE COURT: Regardless of what the evidence might show, you could not impose the Death Penalty?
BY MR. COOKSEY: I could not.
BY THE COURT: All right, sir. I'll let you step down.
* * * * * *
BY THE COURT: Mrs. Hebert, have you heard all the questions that's [sic] been asked today?
BY MRS. HEBERT: Yes, sir.
BY THE COURT: Do you know anybody that's involved in this case?
BY MRS. HEBERT: No, sir.
BY THE COURT: You know any reason you couldn't be a fair Juror?
BY MRS. HEBERT: Yes, sir.
BY THE COURT: What's that?
BY MRS. HEBERT: I would not vote for the Death Penalty.
BY THE COURT: You would not vote for the Death Penalty under any circumstances, is that what you tell me?
BY MRS. HEBERT: Yes, sir.
BY THE COURT: Regardless of what the evidence might show, you would not vote for it. Is that right, Mrs. Hebert?
BY MRS. HEBERT: That's right.
BY THE COURT: All right, you can step down, Mrs. Hebert. Call back tomorrow afternoon.
The jurors stated that they could not under any condition impose the death penalty regardless of what the evidence showed. Appellant obviously relies upon the fact that the word "automatically" was not used by the trial judge in the voir dire and that failure to do so constituted error.
Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), has been modified and supplanted by Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). We are of the opinion that the jurors were correctly excused under Wainwright v. Witt, supra, and under the more stringent test stated in Witherspoon v. Illinois, supra. The assignments of error are rejected.

IV. THE COURT ERRED IN FAILING TO INSTRUCT THE JURY THAT THIS IS A CIRCUMSTANTIAL EVIDENCE

*1299 CASE AND THAT THE STATE OF MISSISSIPPI MUST PROVE ITS CASE TO THE EXCLUSION OF EVERY OTHER REASONABLE HYPOTHESIS AND TO A MORAL CERTAINTY.
Point VI raised by the appellant is rejected for the reason that this is not an entirely circumstantial evidence case. Instances of direct evidence are (1) confession of appellant, (2) direct evidence of officers arresting Jones and taking possession of the victim's pickup truck, (3) evidence that an alleged accomplice mentioned by Jones was incarcerated elsewhere at the time of the homicide. In Keys v. State, 478 So.2d 266, 267 (Miss. 1985), this Court spoke concerning granting an instruction on circumstantial evidence:
Keys invokes a familiar rule. Where the nature of the State's evidence is circumstantial, the sort of instruction requested by Keys here must be given. Flanagin v. State, 473 So.2d 482, 485 (Miss. 1985); Hester v. State, 463 So.2d 1087 (Miss. 1985); Flemmons v. State, 419 So.2d 1034, 1036 (Miss. 1982); Westbrook v. State, 202 Miss. 426, 432-33, 32 So.2d 251, 252 (1947).
It is the law in this state that, where the evidence for the prosecution is wholly circumstantial in nature, the accused is entitled upon request to have the jury instructed that, before they may convict, they must find that each element of the offense has been established beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. See, e.g., Billiot v. State, 454 So.2d 445, 461-62 (Miss. 1984). There is, to be sure, loose talk in some of our cases to the effect that the circumstantial evidence instruction must be given where only one of the elements of the offense charged is established circumstantially. See, e.g., Collins v. State, 447 So.2d 645, 646 (Miss. 1984); King v. State, 315 So.2d 925, 926 (Miss. 1975); Love v. State, 208 So.2d 755, 757 (Miss. 1968). A correct statement is that the instruction must be given only where the prosecution is without a confession and wholly without eye witnesses to the gravamen of the offense charged.
See also Mack v. State, 481 So.2d 793, 795 (Miss. 1985).

VII. THE COURT ERRED IN FAILING TO GIVE JURY INSTRUCTION D-6.
Appellant argues that the denial of Instruction D-6 constitutes reversible error. The instruction follows:
The Court instructs the Jury that intent to steal is a necessary element of the crime of murder while engaged in the commission or robbery and such intent to steal must be formulated by the Defendant prior to or contemporaneously with the homicide.
If you find from the evidence, beyond a reasonable doubt, that the Defendant, GREGORY MONTECARLO JONES, murdered Josie Jones but that the intent to steal was formulated afterwards, you may not find the Defendant guilty of Capital Murder but may find him guilty of Murder.
It is obvious that D-6 is a lesser-included offense instruction. Swanier v. State, 473 So.2d 180 (Miss. 1985); Gillum v. State, 468 So.2d 856 (Miss. 1985); Gates v. State, 484 So.2d 1002 (Miss. 1986); Cabello v. State, 490 So.2d 852 (Miss. 1986), cert. den., 476 U.S. 1164, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986); Gray v. State, 472 So.2d 409 (Miss. 1985). Further, "intent to steal", as used in the instruction, is not correct. "Intent to rob" is the necessary intent of the capital underlying felony. The statute defining robbery does not mention the word "steal" anywhere therein. Instructions D-5 and S-2 properly submitted the question to the jury.
JURY INSTRUCTION D-5
The Court instructs the Jury that Robbery is defined as feloniously taking the personal property of another in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person.

*1300 If the State has proved the elements of murder beyond a reasonable doubt but has failed to prove any one or more of the elements of robbery beyond a reasonable doubt, then you shall not find the Defendant guilty of Capital Murder, but you shall find the Defendant guilty of Murder.
INSTRUCTION NO. S-2
The Court instructs the Jury that if you believe from the evidence in this case beyond a reasonable doubt that the defendant, Gregory Montecarlo Jones, on or about the time and date charged and testified about, in the Second Judicial District of Harrison County, Mississippi, did unlawfully, wilfully, feloniously and of his malice aforethought, and not in necessary self-defense, kill and murder a human being, to-wit: Josie Lincoln Jones, then if you so believe from the evidence in this case beyond a reasonable doubt, the defendant is guilty of Murder and it is your sworn duty to say so by your verdict.
Also, see Pickle v. State, 345 So.2d 623 (Miss. 1977).
There is no merit in the assignment.

VIII. THE COURT ERRED IN ALLOWING THE JURY TO CONSIDER AGGRAVATING CIRCUMSTANCES (1) (2) AND (3).
Here appellant contends that the court erred in allowing the jury to consider aggravating circumstances (1) ... engaged in the commission of robbery, (2) committed for pecuniary gain, and (3) especially heinous, atrocious or cruel. This Court has previously rejected the argument following Assignment VIII. Appellant contends that using the aggravating factors of "commission of robbery" and "pecuniary gain" amounts to doubling up on aggravating circumstances. Also, he contends that "especially heinous, atrocious or cruel" should be defined for the benefit of the jury.
The argument of "doubling up" or "stacking" was rejected again in Wiley v. State, 484 So.2d 339, 351 (Miss. 1986):
The legislation permits both aggravating factors of pecuniary gain and robbery as two distinct and separate circumstances. This Court has addressed this charge in previous cases and found that it does not constitute a stacking of the same factor, but does constitute distinct separate aggravating circumstances. Gray v. State, 472 So.2d 409 (Miss. 1985); Jordan v. State, 464 So.2d 475 (Miss. 1985); Irving v. State, 441 So.2d 846 (Miss. 1983); Hill v. State, 432 So.2d 427 (Miss. 1983); Gilliard v. State, 428 So.2d 576 (Miss. 1983); Smith v. State, 419 So.2d 563 (Miss. 1982). The fact that two circumstances are distinct and separate is more apparent when the underlying felony is one other than robbery, i.e., rape, kidnapping, etc. This Court has followed the statute in interpreting this assertion and finds no merit to this argument. However, attention is called to the bench of this defense claim for the close scrutiny by the trial judge in submission of aggravating circumstances of both robbery and pecuniary gain.
484 So.2d at 351.
See also State v. Irwin, 304 N.C. 93, 282 S.E.2d 439, 448 (1981); Engberg v. State, 686 P.2d 541 (Wyo. 1984); Miller v. State, 269 Ark. 341, 605 S.W.2d 430 (1980); State v. McDonald, 661 S.W.2d 497 (Mo. 1983); State v. Gretzler, 135 Ariz. 42, 659 P.2d 1 (1983); Gray v. Lucas, 677 F.2d 1086 (5th Cir.1982) cert. den., 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983); Wingo v. Blackburn, 783 F.2d 1046 (5th Cir.1986) reh. den., 786 F.2d 654 (5th Cir.1986); Evans v. Thigpen, 631 F. Supp. 274 (S.D.Miss. 1986) cert. den., 476 U.S. 1178, 106 S.Ct. 2908, 90 L.Ed.2d 994 (1986).
We reject the contention of Point VIII.

IX. THE COURT ERRED IN FAILING TO ALLOW THE JURY TO CONSIDER THE MENTAL RETARDATION OF THE DEFENDANT AS A MITIGATING CIRCUMSTANCE.
Jones assigns as error that the lower court erred in refusing appellant's D-9 instruction which sought to submit to the jury appellant's mental retardation condition. *1301 The jury was instructed on six (6) separate mitigating factors:
1. The Defendant has no significant history of prior criminal activity;
2. The offense was committed while the Defendant was under the influence of extreme mental or emotional disturbance;
3. The Defendant was an accomplice in the capital offense committed by another person and his participation was relatively minor;
4. The capacity of the Defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired;
5. The age of the Defendant at the time of the crime;
6. Any other matter, any other aspect of the Defendant's character or record, and any other circumstance of the offense brought you during the trial of this cause which you, the Jury, deem to be mitigating on behalf of the Defendant.
(R.Vol. IX, 1608-09)
The factors (2), (4) and (6) permitted oral argument involving mental retardation, and, following that instruction, defense counsel argued the following to the jury:
Now, also, Greg's capacity. Greg is mentally retarded. We asked Dr. Howard to come over here, put Dr. Howard up on the witness stand and Dr. Howard said that he's got an I.Q. of 61. He's in the lowest one percent of all persons. He functions on a second grade level. He has a functioning level of approximately a seven year old. His reading level is only, maybe a second grader or a third grader. Greg is mentally retarded. Now, I think his capacity should be considered as a mitigating circumstance.... His capacity should be considered as a lessening circumstance. The fact that he is unable to appreciate the circumstances on January 19th, 1981.
* * * * * *
Now, the age of the Defendant, you know, the law doesn't say that this is a biological age. It just says age. Now, we know what his biological age was at that time, about twenty-four years old. But, what was his mental age? What was his age as far as his ability to perform? It was seven or eight.
Now, are you going to consider his mental age or are you going to consider his biological age, when you review these mitigating circumstances?
* * * * * *
Would you send a seven year old child, if he was on the stand for murder, would you consider that person to be a candidate for the death penalty?
Point IX is rejected.

X. THE COURT SHOULD HAVE DEFINED THE PHRASE "ESPECIALLY HEINOUS, ATROCIOUS AND CRUEL."
This Court has never found that such an instruction is constitutionally required, nor has any case appearing here been reversed for failure to grant the instruction defining "heinous, atrocious and cruel." We have held that the terms are not likely to be misunderstood and that they require no further definition. Tokman v. State, 435 So.2d 664 (Miss. 1983); Irving v. State, 441 So.2d 846 (Miss. 1983); Edwards v. State, 441 So.2d 84 (Miss. 1983); Coleman v. State, 378 So.2d 640 (Miss. 1979). This Court has condemned the efforts of lower courts to define "reasonable doubt" or "malice." As stated, such terms should be left to the jury for its understanding and for applying its knowledge and experience. We think the same reasoning and logic applies here and the assignment is denied.

XI. THE PROSECUTING ATTORNEY MADE IMPROPER ARGUMENT TO THE JURY DURING CLOSING ARGUMENTS IN THE PENALTY PHASE.
The district attorney, in closing argument, said that
Under "B", there are three different criteria listed and it says that only one of those has to exist, in the aggravating stage, before you can return the death penalty. All three, we submit, exist. And, when you look at these, I am sure you are going to agree.

*1302 Down on the second page, there is a list of six, in mitigation. As Gray told you, nothing sounds in mitigation.
They presented Dr. Howard to give you mitigation and he said he knew what he was doing, then and now. And just because he's at the labor level of life, does not mean that he's exempt from law.
And so those six "cut loose" reasons down there, I hope that you will remember your oath that you would follow the law and not find some excuse to cut him loose.
On motion for a new trial and argument in support of the motion, the trial judge, in overruling the motion, said:
I guess, in a way, that would be somebody's notion as to what "turned loose" would imply. Of course, if you was [sic] trying to say that he would get parole, that would be reversible error. But, I don't think that was stated in any such context as that.
Defense counsel responded, "No, sir, he didn't."
In commenting upon the argument of the district attorney, the defense counsel agreed with the judge that the prosecutor's closing statement was not meant to imply that one given a life sentence could be eligible for parole. In our opinion, the argument made by the prosecuting attorney, while not entirely clear, was not impermissible and did not constitute reversible error. Neal v. State, 451 So.2d 743 (Miss. 1984); Howell v. State, 411 So.2d 772 (Miss. 1982).

XII. THE DEFENDANT IS NOT ELIGIBLE FOR THE DEATH PENALTY UNDER THE ENMUND V. FLORIDA DECISION OF THE UNITED STATES SUPREME COURT.
Appellant contends that the sentence of death imposed upon him does not conform to the requirements of Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). This contention is misplaced. The lower court instructed the jury in part as follows:
A.
To return the death penalty in this case you must first unanimously find, in writing, from the evidence beyond a reasonable doubt that one or more of the following facts existed:
1. That the Defendant actually killed Josie Lincoln Jones;
2. That the Defendant attempted to kill Josie Lincoln Jones;
3. That the Defendant intended that the killing of Josie Lincoln Jones take place;
4. That the Defendant contemplated that lethal force would be employed.
In its verdict, the jury found two of those factors to exist, viz,
WE, THE JURY, UNANIMOUSLY FIND FROM THE EVIDENCE BEYOND A REASONABLE DOUBT THAT THE FOLLOWING FACTS EXISTED AT THE TIME OF THE COMMISSION OF THE CAPITAL MURDER:
3. THAT THE DEFENDANT INTENDED THAT THE KILLING OF JOSIE LINCOLN JONES TAKE PLACE.
4. THAT THE DEFENDANT CONTEMPLATED THAT LETHAL FORCE WOULD BE EMPLOYED.
Those findings of the jury conform to the requirements of Mississippi Code Annotated § 99-19-101(7) (Supp. 1985), and follow the constitutional standard enunciated in Enmund, supra. We are of the opinion that there is no merit in Assignment XII.

XIII. THE IMPOSITION OF THE DEATH PENALTY IS DISPROPORTIONATE TO THE PENALTY IMPOSED IN SIMILAR CASES CONSIDERING BOTH THE CRIME AND THE DEFENDANT.

XIV. THE DEATH PENALTY IS UNCONSTITUTIONAL AS APPLIED TO GREGORY MONTECARLO JONES.
Pursuant to Mississippi Code Annotated § 99-19-105(3)(a), (b), (c) and (5) and the decisions of this Court and the Federal courts on imposition of the death penalty, we have reviewed the record in this case and have compared it and the death sentence *1303 imposed in the cases decided by this Court since Jackson v. State, 337 So.2d 1242 (Miss. 1976), which cases are set forth in Appendix A.
The case of Edwards v. State, 441 So.2d 84 (Miss. 1983), cited by appellant, is distinguished from the present case. In Edwards, the defendant was committed to Mississippi State Hospital, Whitfield, Mississippi, under a court adjudication and order that he was insane. He escaped and before being returned to the institution, committed the homicide of a policeman. Edwards' death sentence was commuted to life by this Court as one with "a long history of suffering from the mental disease schizophrenia of the paranoid type." 441 So.2d at 93. Neal v. State, 451 So.2d 743 (Miss. 1984) is more comparable to the case sub judice. In Neal, the defendant had an I.Q. of 54, lower than that of appellant Jones. It was held that mild mental retardation creates no per se bar to execution.
We now hold that after a review of the cases coming before this Court, and comparing them to the present case, the punishment of death is not too great when the aggravating and mitigating circumstances are weighed against each other and the death penalty will not wantonly or freakishly be imposed here.
We find and conclude that the death sentence was not imposed under the influence of passion, prejudice or any other arbitrary factor, and that the sentence of death is not excessive or disproportionate to the penalty imposed in those cases since 1976, considering both the crime and the manner in which it was committed and the defendant; that the death penalty imposed on Jones is consistent and even-handed to like and similar cases; and that the sentencing phase followed in his trial provided a meaningful basis for distinguishing the few cases in which the death penalty is imposed and the many cases in which it is not imposed.
The judgment of the lower court is affirmed and Wednesday, February 25, 1987, is set for execution of the sentence and the infliction of the death penalty in the manner provided by law.
AFFIRMED. WEDNESDAY, FEBRUARY 25, 1987, SET FOR EXECUTION OF THE DEATH PENALTY.
WALKER, C.J., HAWKINS, P.J., and DAN M. LEE, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
ROBERTSON, J., concurs with sections I-VII, IX and XI-XIV, concurs with results to sections VIII and X, and files separate concurring opinion, joined by DAN M. LEE and PRATHER, JJ., as to sections VIII and X.
GRIFFIN, J., not participating.

APPENDIX A
DEATH CASES AFFIRMED BY THIS COURT:
Johnson v. State, 477 So.2d 196 (Miss. 1985); Gray v. State, 472 So.2d 409 (Miss. 1985); Cabello v. State, 471 So.2d 332 (Miss. 1985); Jordan v. State, 464 So.2d 475 (Miss. 1985); Wilcher v. State, 455 So.2d 727 (Miss. 1984); Billiot v. State, 454 So.2d 445 (Miss. 1984); Stringer v. State, 454 So.2d 468 (Miss. 1984); Dufour v. State, 453 So.2d 337 (Miss. 1984); Neal v. State, 451 So.2d 743 (Miss. 1984); Booker v. State, 449 So.2d 209 (Miss. 1984); Wilcher v. State, 448 So.2d 927 (Miss. 1984); Caldwell v. State, 443 So.2d 806 (Miss. 1983); Irving v. State, 441 So.2d 846 (Miss. 1983); Tokman v. State, 435 So.2d 664 (Miss. 1983); Leatherwood v. State, 435 So.2d 645 (Miss. 1983); Hill v. State, 432 So.2d 427 (Miss. 1983); Pruett v. State, 431 So.2d 1101 (Miss. 1983); Gilliard v. State, 428 So.2d 576 (Miss. 1983); Evans v. State, 422 So.2d 737 (Miss. 1982); King v. State, 421 So.2d 1009 (Miss. 1982); Wheat v. State, 420 So.2d 229 (Miss. 1982); Smith v. State, 419 So.2d 563 (Miss. 1982); Johnson v. State, 416 So.2d 383 (Miss. 1982); Edwards v. State, 413 So.2d 1007 (Miss. 1982); Bullock v. State, 391 So.2d 601 (Miss. 1980); Reddix v. State, 381 So.2d 999 (Miss. 1980); Jones v. State, 381 So.2d 983 (Miss. 1980); Culberson v. State, 379 So.2d 499 (Miss. 1979); Gray v. State, *1304 375 So.2d 994 (Miss. 1979); Jordan v. State, 365 So.2d 1198 (Miss. 1978); Voyles v. State, 362 So.2d 1236 (Miss. 1978); Irving v. State, 361 So.2d 1360 (Miss. 1978); Washington v. State, 361 So.2d 61 (Miss. 1978); Bell v. State, 360 So.2d 1206 (Miss. 1978).
DEATH CASES REVERSED AS TO GUILT PHASE AND SENTENCE PHASE:
West v. State, 485 So.2d 681 (Miss. 1985); Fisher v. State, 481 So.2d 203 (Miss. 1985); Johnson v. State, 476 So.2d 1195 (Miss. 1985); Fuselier v. State, 468 So.2d 45 (Miss. 1985); West v. State, 463 So.2d 1048 (Miss. 1985); Jones v. State, 461 So.2d 686 (Miss. 1984); Moffett v. State, 456 So.2d 714 (Miss. 1984); Lanier v. State, 450 So.2d 69 (Miss. 1984); Laney v. State, 421 So.2d 1216 (Miss. 1982).
DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR RESENTENCING TO LIFE IMPRISONMENT:
Edwards v. State, 441 So.2d 84 (Miss. 1983); Dycus v. State, 440 So.2d 246 (Miss. 1983); Coleman v. State, 378 So.2d 640 (Miss. 1979).
DEATH CASES REVERSED AS TO PUNISHMENT AND REMANDED FOR A NEW TRIAL ON SENTENCING PHASE ONLY:
Pinkton v. State, 481 So.2d 306 (Miss. 1985); Mhoon v. State, 464 So.2d 77 (Miss. 1985); Cannaday v. State, 455 So.2d 713 (Miss. 1984); Wiley v. State, 449 So.2d 756 (Miss. 1984); Williams v. State, 445 So.2d 798 (Miss. 1984).
ROBERTSON, Justice, concurring:

I.
As in Wiley v. State, 484 So.2d 339 (Miss. 1986) (see particularly my separate opinion, 484 So.2d at 356-63, in which Justices Dan M. Lee and Sullivan joined), I find myself between Scylla and Charibdis. In articulating my views and casting my vote whether Gregory Montecarlo Jones should live or die, I seek to avoid derogation of the principles of stare decisis, and as well not to denigrate my sworn allegiance to individualized justice, the notion that no judge should vote for a proposition that cannot be rationally justified. I refer to the fact that en route to affirmance of the death sentence imposed upon Jones, the Court again places its imprimatur upon two points of construction of our capital sentencing statute I find demonstrably flawed. We do this in "blind imitation of the past" cf. Holmes, The Path of the Law, 10 Harv.L. Rev. 457, 469 (1897).
First, and specifically, we again approve a construction of our capital sentencing statute which authorizes a single factual circumstance to generate two legally separate and distinct aggravating circumstances, to-wit: that the capital offense was committed while the defendant was engaged in the commission of a robbery and that the capital offense was committed for pecuniary gain. Second, we once again approve a distortion of the legislative language by recognizing in effect that every capital murder is "especially heinous, atrocious or cruel," if only the jury so finds, notwithstanding the absence of evidence to that effect.
As in my separate opinion in Wiley, I concur in the result we reach today, primarily by reason of stare decisis. Our prior cases have held that submission to the jury of instructions such as those at issue here, in fact situations legally analogous to that before us today, is not error where the circuit judge in his discretion elects to give them.
This does not mean it must be ever thus. As in Wiley the primary addressees of this opinion are our trial judges. The judicially sound way out of the hole we have dug for ourselves is for our trial judges to exercise their sound discretion in cases in the future in denial of the robbery/pecuniary gain stacking instruction, in requiring that the prosecution offer proof that the capital murder was indeed especially heinous, cruel and atrocious before the point goes to the jury at all, and, where a jury issue is made out, by granting an appropriate explanatory instruction.

II.
My first Wiley concern arises only in cases where the capital murder is committed *1305 in the course of a robbery, a factual circumstance by no means unfamiliar in the capital cases this Court has considered over the past decade.
As all know, two of the statutory aggravating circumstances which, if factually supported, a jury may consider at the penalty phase, are:
(d) the capital offense was committed while the defendant was engaged ... in the commission of . .. any robbery... .
* * * * * *
(f) the capital offense was committed for pecuniary gain.
Miss. Code Ann. § 99-19-101(5) (Supp. 1986).
Today, as before, we refuse to disturb a trial judge's jury instruction which allows the jury, upon the predicate of a single factual circumstance, to find both of these aggravating circumstances. The vice in this instruction is that it gives the prosecution two points toward death where rationally it is entitled to but one. Such stacking has no place in a fairly administered, individualized guided discretion capital sentencing system.
In Wiley I explained that the "robbery" and "pecuniary gain" aggravating circumstances legally and linguistically contemplate separate and distinct circumstances. In the present case, the "robbery" aggravating circumstance instruction was entirely proper. There was substantial evidence that the defendant, Gregory Montecarlo Jones, committed a robbery of Josie Lincoln Jones in substantial connection with the murder. On the other hand, the "pecuniary gain" instruction was wholly out of place. This language contemplates the hired killing, the contract murder or perhaps the murder to collect life insurance proceeds. There is no evidence in the present record which would authorize such an instruction.
My complaint is twofold. First, this stacking of aggravating circumstances in capital murder/robbery cases is indefensible for the rather simple reason that a single, legally indivisible act of the defendant may rationally aggravate a murder but once. Wiley, 484 So.2d at 358. Second, we continue to reject the proposition which I urge  there and here  without ever employing "neutral, non-result oriented techniques of legal reasoning to explain the basis of the rule we have chosen to follow." Wiley, 484 So.2d at 358.
In its brief in today's case, the Attorney General, as representative of the State's prosecutorial interest, takes up my Wiley challenge to provide an acceptable rationale for robbery/pecuniary gain stacking. It does this not by its own rationale but by citation to decisions from six other jurisdictions: North Carolina, Delaware, Wyoming, Missouri, Arkansas and Arizona. North Carolina is most prominent. See State v. Oliver, 302 N.C. 28, 274 S.E.2d 183 (1981) and State v. Irwin, 304 N.C. 93, 282 S.E.2d 439 (1981). These cases justify stacking because the concept of "pecuniary gain" has reference to "the motive of the defendant rather than his acts." Irwin, 282 S.E.2d at 448. The "robbery" and "pecuniary gain" circumstances are said to be different because the former refers to the defendant's acts and the latter to his motive. Wyoming buys into this "reasoning" in Engberg v. State, 686 P.2d 541, 552-54 (Wyo. 1984), which, of course, is utter nonsense for the rather elementary reason that intent to steal, the "motive," is already an essential element of the criminal offense of robbery. See McFadden v. State, 408 So.2d 476, 481 (Miss. 1981); McCray v. State, 153 Miss. 587, 589, 121 So. 291, 292 (1929). Indeed, the words "rob" or "robbery" import an intent to steal. Herron v. State, 176 Miss. 795, 799, 170 So. 536, 537 (1936); Baygents v. State, 154 Miss. 36, 39, 122 So. 187, 188 (1929). Whoever heard of a prosecutor trying to convict one of robbery without trying to prove the exact, same motive North Carolina and Wyoming find having nothing to do with robbery but lying exclusively within the province of "pecuniary gain". The state of mind, intent, motive  use whatever word you will  which yields a defendant guilty of the aggravating circumstance of robbery is the same as that which in North Carolina and Wyoming, and, I regret, Mississippi, exposes him to the finding that his capital offense was committed for pecuniary gain. *1306 A single, legally indivisible evil state of mind may rationally aggravate a capital murder but once. Wiley, 484 So.2d at 358.
I have no quarrel with the cases cited from Arizona, State v. Gretzler, 135 Ariz. 42, 659 P.2d 1, 7, 8-9 (1983); Arkansas, Miller v. State, 269 Ark. 341, 605 S.W.2d 430, 438, 440 (1980); and Missouri, State v. McDonald, 661 S.W.2d 497, 503 (Mo. 1983). None of those cases authorizes the sort of stacking at issue here. True, each of these cases, in the context of a robbery/killing, approves submission to the jury of the particular state's analogue to our "pecuniary gain" aggravating circumstance. But in none of those cases was robbery also submitted or found as an aggravating circumstance at sentencing. Flamer v. State, 490 A.2d 104, 125-26 (Del. 1983) is innocuous. It approves stacking (a) because the Florida case rejecting it, Provence v. State, 337 So.2d 783 (Fla. 1976) was procedurally distinguishable  which proves nothing  and (b) without offering any neutral, non-result-oriented rationale why stacking is fair or should be allowed, a la our cases cited in Wiley, 484 So.2d at 357-58.
In the end I again urge that the views I expressed in Wiley, 484 So.2d at 357-58, are legally and logically sound[1] and that they have not been refuted or undermined by anything provided by the State in its brief in today's case (although I greatly appreciate the Attorney General's taking the point seriously enough to provide what cases could be found in other jurisdictions).
In future capital murder trials in which the killing occurred while defendant was in the course of commission of a robbery, jury instructions at the sentencing phase should not authorize the finding of two aggravating circumstances predicated upon the same factual occurrence. In such cases the better, fairer course would be submission to the jury of aggravating circumstance (d) [Section 99-19-101(5)(d)], that the capital offense was committed while the defendant was engaged in commission of any robbery, and excluding aggravating circumstance (f) [Section 99-19-101(5)(f)], that the capital offense was committed for pecuniary gain.

III.
My second concern is the trial judge's determination that the evidence in this case was legally sufficient to submit to the jury aggravating circumstance (h): "The capital offense was especially heinous, atrocious or cruel," Miss. Code Ann. § 99-19-101(5)(h) (Supp. 1986), when nothing could be further from the truth. See Justice Prather's dissenting opinion in Edwards v. State, 441 So.2d 84, 94-96 (Miss. 1983) and my separate opinion in Wiley, 484 So.2d at 358-60. My complaint is that today, as in Wiley and before, we construe this aggravating circumstance in a manner that does violence to the language employed by the legislature and strips it of any capacity to aid in the fair administration of our capital sentencing system.
Our context is the fundamental premise of the individualized, guided discretion capital sentencing system mandated by Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) and progeny, to-wit: the sentencing authority, in this instance, the jury, must be submitted rational guidelines to be applied to all murders and must winnow out those qualitatively more reprehensible and expose only persons committing those to the death penalty. The vice in this Court's administration of the "especially heinous, atrocious or cruel" aggravating circumstance is that in practice it has been rendered impotent to assist performance of this winnowing out function. That is, our cases have reached the state where we are routinely holding that practically every murder is at least arguably "especially heinous, atrocious or cruel."
A useful contrast may be found in Arizona, which has followed a different course in construction of its analogous aggravating circumstance. In State v. Gretzler, 135 *1307 Ariz. 42, 659 P.2d 1 (1983), the Arizona Supreme Court wrote
Our initial interpretation of this statutory phrase recognized that the words "especially heinous, cruel, or depraved" killing wherein additional circumstances of the nature enumerated * * * set the crime apart from the usual or the norm. State v. Knapp, supra, 114 Ariz. [531] at 543, 562 P.2d [704] at 716 [(1977)], citing State v. Dixon, 283 So.2d 1, 9 (Fla. 1973). "We have more recently reiterated that we will not allow this provision to be used as a "catch-all" for those first degree murders where no other aggravating circumstance applies." State v. Ortiz, supra, 131 Ariz. [195] at 206, 639 P.2d [1020] at 1031 [(1981)].
* * * * * *
Where, however, there is no evidence that the victims actually suffered physical or mental pain prior to death, or where the evidence presented is inconclusive, we have held that cruelty was not shown. See, e.g., State v. Ortiz, supra, 131 Ariz. at 210, 639 P.2d at 1035; State v. Bishop, supra, 127 Ariz. [531] at 534, 622 P.2d [478] at 481 [(1981)]; State v. Clark, supra, 126 Ariz. [428] at 436, 616 P.2d [888] at 896 [(1980)]; State v. Ceja, supra, 126 Ariz. [35] at 39, 612 P.2d [491] at 495 [(1980)].
659 P.2d at 9-10.
In Edwards, Justice Prather, with three other Justices concurring, urged that the words "especially heinous, atrocious or cruel" were sufficiently vague that greater refinement and specificity should be brought to bear in the matter of jury instructions. Edwards, 441 So.2d at 94-96. The point, of course, was to render this particular statutory aggravating circumstance capable of performing the constitutionally mandated winnowing out function. In my separate opinion in Wiley I suggested that greater emphasis be given to the critical word "especially" to the end that the aggravating circumstance be applied only where the level of heinousness, atrociousness or cruelty of the murder substantially exceeded that which in the laymen's intuitive sense no doubt accompanies any murder. Though both Justice Prather's suggestion in Edwards and my suggestion in Wiley failed to command support of a majority of the Court, I continue to believe that each has substantial merit.
Upon further reflection, I would urge our trial judges, when deciding (a) whether the evidence on the issue of "especially heinous, atrocious or cruel" was legally sufficient to submit that possible aggravating circumstance to the jury and (b) how to frame an instruction defining "especially heinous, atrocious or cruel," should consider, in addition to the Edwards and Wiley suggestions noted above, these further points.
First, sensitive reflection upon the language "especially heinous, atrocious or cruel" imports notions of torture. A murder may be said to be "especially heinous, atrocious or cruel" when it involves the unnecessary and wanton infliction of pain. The idea that this aggravating circumstance imports the torture of the victim was seemingly adopted in Coleman v. State, 378 So.2d 640, 648 (Miss. 1979). Since Coleman we have sporadically given the torture notion lip service. Wiley v. State, 484 So.2d 339, 353-54 (Miss. 1986); Jordan v. State, 464 So.2d 475, 478 (Miss. 1985); Mhoon v. State, 464 So.2d 77, 84-85 (Miss. 1985); Billiot v. State, 454 So.2d 445, 464-65 (Miss. 1984). We have on numerous occasions, however, refused to disturb "especially heinous, atrocious or cruel" jury findings on facts suggesting no element of torture. See, e.g., Booker v. State, 449 So.2d 209, 213, 220-21 (Miss. 1984); Irving v. State, 441 So.2d 846, 850 (Miss. 1983). In Irving we recognized that
the great majority of death penalty cases affirmed by this Court involve some type of physical and/or mental torture to the victim,
but went on to observe that
we have never specifically held that a finding of § 99-19-101(5)(h) ["especially heinous, atrocious or cruel"] must be supported by evidence of prolonged suffering.
441 So.2d at 850.
The Irving Court offers no reason why "especially heinous, atrocious or cruel" *1308 should not be held to require evidence of torture or prolonged suffering. Rather the Court affirms Irving's death sentence because the facts were found analogous to those in Gilliard v. State, 428 So.2d 576 (Miss. 1983) and Edwards v. State, 413 So.2d 1007 (Miss. 1982).
An instinctive analogy may be found in the "cruel and unusual punishment" clause of the Eighth Amendment to the Constitution of the United States. Grammatically speaking, the adjectival collection "especially heinous, atrocious or cruel" would seem to connote an infliction upon the victim of pain or agony even greater than that contemplated by the relatively milder phrase "cruel or unusual." The point is brought into focus by reference to the authoritative construction of the words "cruel or unusual" as not precluding infliction of the death penalty by shooting or, more specifically, a firing squad. See Wilkerson v. Utah, 99 U.S. (9 Otto) 130, 136, 25 L.Ed. 345 (1878). In the context of the infliction of the death penalty, the method of killing the convicted murderer is not cruel or unusual unless it is barbarous, involves torture or a lingering death. See Gregg v. Georgia, 428 U.S. 153, 170-71, 96 S.Ct. 2909, 2923-24, 49 L.Ed.2d 859, 873 (1976). The record in the case at bar reflects that Josie Lincoln Jones was found dead on her living room floor. She had been fatally wounded by three bullets fired from a .22 caliber single shot, bolt action rifle. There is no evidence that Ms. Jones suffered a lingering death or that she was subjected to torture or the wanton infliction of pain. More specifically, there is no evidence that Jones' death was more torturous, barbarous, painful or cruel than has been that of any individual executed by a firing squad. See Andrews v. Shulsen, 600 F. Supp. 408, 431 (D.Utah 1984), aff'd. 802 F.2d 1256, 1275 n. 16 (10th Cir.1986). When we add to this the mental agony experienced by the condemned while awaiting execution, see, e.g., Camus, Reflections On The Guillotine, reprinted in Resistance, Rebellion and Death, 152-57 (1960), Dostoyevsky, The Idiot 47-48 (D. Magarshack trans. 1955); and District Attorney for Suffolk District v. Watson, 381 Mass. 648, 664, 684-86, 411 N.E.2d 1274, 1283, 1290-95 (1980) the experience of the person executed by firing squad is more heinous, atrocious and cruel than that of a murder victim such as Josie Lincoln Jones.
Notwithstanding the force of correct linguistic analysis, we have repeatedly refused to disturb jury findings that gunshot murders, unattended by significant prior fear on the part of the victim and where death followed the shooting within a matter of minutes, were "especially heinous, atrocious or cruel." See, e.g., Wiley v. State, 484 So.2d 339, 342, 353 (Miss. 1986) (ambush-style shotgun slaying where victim had no idea he was in danger and died shortly after being shot); Booker v. State, 449 So.2d 209, 213, 220-21 (Miss. 1984) (victim shot in head at time when he had no idea he was about to be shot; no evidence of physical suffering prior to death); Irving v. State, 441 So.2d 846, 850 (Miss. 1983) (victim shot within a few seconds of his first seeing murderer, "died instantly of a single shotgun wound to the neck"); Gilliard v. State, 428 So.2d 576, 578, 586 (Miss. 1983) (shotgun slaying of liquor store proprietor within minutes after defendant entered store; no evidence of lingering death); Evans v. State, 422 So.2d 737, 739, 747 (Miss. 1982) (food store clerk shot in course of robbery; no suggestion in opinion of substantial pre-death mental anguish or pain after shooting); Johnson v. State, 416 So.2d 383, 385, 393 (Miss. 1982) (town marshall shot unexpectedly in line of duty, fell to ground, then shot twice in head and lost consciousness within fifteen seconds); and Edwards v. State, 413 So.2d 1007, 1008, 1013 (Miss. 1982) (convenience store clerk shot in course of robbery; no evidence of victim being placed in fear substantial time before shooting, nor that he suffered a lingering or painful death). And today we refuse to disturb a jury finding that the killing of Josie Lincoln Jones was "especially, heinous, atrocious or cruel" in the context of a record reflecting that she had been shot by three .22 caliber bullets, and in the absence of significant pre-death fear or significant post-shooting pain or lingering. Objectively and dispassionately, *1309 none of these murders was as cruel an act as the execution of Gary Gilmore by firing squad in Utah in 1977. See Gilmore v. Utah, 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976).
To be sure, much may be said of these eight murders that may suggest condemnation of the accuseds. Other aggravating circumstances are present in each case. None, however, may fairly be labeled "especially heinous, atrocious or cruel" without doing substantial violence to the common sense meaning of that phrase. In my view, upon reflection, and as I have come to understand the phrase, the evidence was insufficient as a matter of law in each of these eight cases to allow submission to the jury for its consideration the possible aggravating circumstance that the capital offense was especially heinous, atrocious or cruel.
The United States Court of Appeals for the Fifth Circuit has recently considered our stewardship of the "especially heinous, atrocious or cruel" aggravating circumstance in Johnson v. Thigpen, 806 F.2d 1243, 1245 (5th Cir.1986). The Johnson opinion begins recognizing our seeming adoption of a restrictive construction of the language at issue in Coleman v. State, 378 So.2d 640, 648 (Miss. 1979). Indeed, the Court of Appeals noted that it had relied upon the Coleman reading of "especially heinous, atrocious or cruel" in Gray v. Lucas, 677 F.2d 1086, 1105 (5th Cir.1982). Johnson then observes, quite accurately, that
"Since Gray, however, the Mississippi Supreme Court has not consistently applied its Coleman limiting construction. 806 F.2d at 1246.
* * * * * *
The limiting construction we found in Gray had been adopted in Coleman appears now to be more honored in breach than observance." 806 F.2d at 1247.
The Johnson discussion takes place in the context of a federal constitutional claim that our "especially heinous, atrocious or cruel" aggravating circumstance as applied fails to perform the narrowing function mandated by such cases as Woodson v. North Carolina, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) and progeny. Johnson finds no constitutional error because, leaving aside aggravating circumstances, our statutory definition of capital murder narrows the class of persons eligible for the death penalty in a constitutionally adequate manner. Compare Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). We have searched Johnson in vain for the slightest hint that the Fifth Circuit, as an external observer, considers that our "especially heinous, atrocious or cruel" aggravating circumstance  as we have administered it for the past five years  contributes one iota to the goal of fair and rational selection, from all capital murderers, of those whose crimes are qualitatively sufficiently reprehensible that they should be exposed to judicial consideration of the penalty of death. In contrast with Johnson our concern is the construction and application of words chosen by our legislature and embodied in an admittedly constitutional statute. Though it finds no constitutional error, Johnson suggests tactfully unmistakeably  and correctly  that in recent years we have not done a very good job in that statutory construction endeavor.
Notwithstanding that this Court may consider itself bound under stare decisis, the trial judges of this state in cases arising hereafter are free to employ those rules generally applicable in deciding whether fact questions should be submitted to a jury. That decision turns upon whether there is evidence which, if believed by the jury, could result in resolution of the issue in favor of the party requesting the instruction. Conversely, only where the evidence is so one-sided that no reasonable juror could find for the requesting party on the issue at hand may the trial court deny an instruction on a material issue. See, e.g., Phillips v. State, 493 So.2d 350, 353-54 (Miss. 1986); Harbin v. State, 478 So.2d 796, 799 (Miss. 1985); Lee v. State, 469 So.2d 1225, 1230-31 (Miss. 1985); Fairchild v. State, 459 So.2d 793, 801 (Miss. 1984). The above standard in mind, in cases (such as the one at bar) where the victim died of *1310 gunshot wounds, or any other means causing relatively instant death, and where there is no evidence of any barbarity, torture or wanton infliction of pain, or a lingering mental or physical agony, the trial judge should hold as a matter of law that the prosecution is not entitled to have the jury consider, as a possible circumstance in aggravation, that the capital murder may have been "especially heinous, atrocious or cruel." Cf. Miller v. State, 269 Ark. 341, 605 S.W.2d 430, 438-39 (1980).
In those cases where the prosecution's evidence meets this threshold test, the trial judge should afford the jury an instruction which clearly communicates to the jury that, in order to find the existence of this circumstance in aggravation, the jury must find beyond a reasonable doubt that the killing possessed some quality of barbarity, torture, wanton infliction of pain or lingering mental or physical agony over and above that attendant upon a relatively unexpected fatal blow producing a relatively instant death. See Edwards v. State, 441 So.2d 84, 94-96 (Miss. 1983) (Prather, J., dissenting, joined by Patterson, C.J., and Hawkins and Robertson, JJ.).

IV.
Having had my say and for reasons expressed further in my Wiley opinion, 484 So.2d at 362-63, I concur in Sections I through VII, IX, and XI through XIV of the majority opinion. I reluctantly concur in the result in Sections VIII and X.
DAN M. LEE and PRATHER, JJ., join in this opinion.
GRIFFIN, J., not participating.

ON PETITION FOR REHEARING
HAWKINS, Presiding Justice, for the Court:
Gregory Montecarlo Jones was tried and found guilty of capital murder by a Harrison County jury. Conviction and sentence of death were affirmed by this Court on January 28, 1987. Jones v. State, 517 So.2d 1295. He presently seeks rehearing of that decision on the basis of a single issue not raised prior to the verdict. In sum, we today encounter the increasingly familiar issue of a claim to relief under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), made by one who voiced no objection prior to conviction.

I.
The record in this case reflects that the trial court excused five prospective jurors due to various forms of hardships. The State then used its first four peremptory challenges to excuse two white jurors and two black jurors. One of the black jurors knew the District Attorney's wife, was a friend of a policeman/witness for the State, and had objections to being sequestered. The other black juror was a minister; although he stated that he didn't remember the facts of the case, he gave the trial judge some reason to suspect that he knew about the case because the judge addressed him personally in voir dire. Furthermore, Jones concedes that his counsel made no objection to the use of these peremptory challenges on any ground, nor did he move to strike the jury venire. In fact, the first challenge to the composition of the jury was made when Jones filed his assignment of error and brief in this appeal following the verdict of guilty. On direct appeal to this Court, Jones raised fourteen assignments of error, one of which alleged that the Court erred in permitting the State to systematically exclude black venire men by peremptory challenge. It is thus clear for purposes of our discussion that this objection to the jury composition came after Jones had been found guilty and the jury had been finally released. Although not a dispositive fact, it is noteworthy that the jury that found Jones guilty of capital murder consisted of eleven white jurors and one black juror. Two white alternate jurors are also reflected by the record.

II.
Jones predicates his plea for a new trial on Batson v. Kentucky, supra, and Griffith v. Kentucky, 479 U.S. ___, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), cases which *1311 collectively hold that racially motivated peremptory strikes by the State may supply the basis for objection rooted in the due process clause. Specifically, Batson relieves the onerous burden previously shouldered by litigants asserting this claim under prior law. See Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Griffith supplies the window in time through which Batson may be afforded limited retroactivity.
Initially, we need state that the question of retroactivity is not at issue in this case. Admittedly, Jones' case was clearly on direct appeal at the time Batson was decided. Griffith dictates the availability of Batson rights since Jones' appeal was perfected on April 15, 1985, and affirmed by this Court on January 28, 1987, while Batson was decided on April 30, 1986. See generally Williams v. State, 507 So.2d 50 (Miss. 1987); Harper v. State, 510 So.2d 530 (Miss. July 29, 1987). An equally important question arises, however, centering in Jones' clear failure to timely object in any form or fashion to the jury selection process until after he was found guilty and sentenced. This issue, one left to the State courts by the very language of Batson,[1] must be addressed.
The issue of timely preservation of a Batson claim is not novel to this Court or to other courts. This very day, in a strikingly similar procedural context, we address the same question. Thomas v. State, 517 S.W.2d 1285 (1987). Therein, Presiding Justice Roy Noble Lee discusses at length both the rationale underlying our consistent requirement of a contemporaneous objection to jury selection claims and the numerous state and federal cases from other courts which have likewise required timely challenge. In the light of Thomas, we need not belabor the discussion. Rather we note that Thomas controls the present petition and we adhere to our case law affirming the necessity for trial objection to a Batson claim. We further hold that objection to be timely only where it is made prior to the empanelling of the jury. We see nothing in the record of Jones' trial to excuse his failure to object.
Our ruling here should not be interpreted so myopically as to suggest that litigants were required to assert a challenge in Batson language at a time when that language did not exist. All we hold today is that in cases tried prior to Batson which were on appeal when Batson was decided, the record must reflect some form of timely objection grounded in allegations of racially discriminatory jury selection. Surely an objection based on Swain would at the time of Jones' trial been sufficient to preserve this issue for appellate review. Only in such instances can the record adequately reflect important features such as the race of the potential jurors, the race of the jurors peremptorily challenged, any supporting facts which might be dictated into the record by counsel, and findings made by the trial judge in ruling on the objection. Moreover, only in cases evidencing a meaningful record can this Court begin to fulfill our duty to review the record for any trial errors.
For reasons stated above, Appellant's petition for rehearing is denied.
PETITION FOR REHEARING DENIED.
WALKER, C.J., ROY NOBLE LEE, P.J., and DAN M. LEE, J., concur.
ROBERTSON, PRATHER, SULLIVAN and ANDERSON, JJ., dissent.
GRIFFIN, J., not participating.

ON PETITION FOR REHEARING
ROBERTSON, Justice, dissenting:

I.
For reasons I have noted in Thomas v. State, 517 So.2d 1285, 1288 (1987), I dissent from denial of a rehearing in the present case on a single issue: Gregory Montecarlo *1312 Jones' assertion of rights created in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
As in Thomas, the majority acts not on the merits but denies the Batson claim for failure timely to assert it. As in Thomas, illusion and wish becloud reason and fairness as is made apparent by our timetable.

 April 3, 1985 Jones' trial in Circuit Court (the point when
 the majority says he should have asserted the
 Batson claim)
 April 22, 1985 cert. granted in Batson
 April 30, 1986 Batson decided

Assuming Batson retroactivity, a matter established in Griffith v. Kentucky, 479 U.S. ___, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), and thus put beyond our reason for thought, why should a man be executed, his appeal denied, for failure to assert the Batson right, a right that had no existence at the time of his only procedural opportunity to assert it?

II.

A.
More so than in the case of Elisha Thomas, Jr., Jones' case should be Batson-scrutinized because Jones has been sentenced to die. The Supreme Court of the United States in recent years has repeatedly recognized that the penalty of death is qualitatively different from any other form of punishment known to our society and, because of its uniqueness, proceedings and procedures precedent to its imposition simply are not the same as in other cases. Because capital punishment is "qualitatively different," Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) holds that
there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment.
428 U.S. at 305, 96 S.Ct. at 2991.
Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) observes, in a somewhat different context, that the penalty of death is "so profoundly different" that a greater degree of sentencing reliability is required. 438 U.S. at 604-05, 98 S.Ct. at 2964-65.
Only because there are some who would have it otherwise, I would note that the death is different principle has been recognized by the Supreme Court on occasions almost too often to enumerate. See, e.g., Booth v. Maryland, 478 U.S. ___, ___ n. 12, 107 S.Ct. 2529, 2536 n. 12, 96 L.Ed.2d 440, 452 n. 12 (1987); Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986); Spaziano v. Florida, 468 U.S. 447, 456, 104 S.Ct. 3154, 3160, 82 L.Ed.2d 340, 349 (1984); Sullivan v. Wainwright, 464 U.S. 109, 112, 104 S.Ct. 450, 451-52, 78 L.Ed.2d 210, 213 (1983); Stephens v. Kemp, 464 U.S. 1027, 1032, 104 S.Ct. 562, 565, 78 L.Ed.2d 370, 375 (1983) (per dissenting opinion of Justice Powell, joined by Chief Justice Burger, Justice Rehnquist and Justice O'Conner); Beck v. Alabama, 447 U.S. 625, 638, 100 S.Ct. 2382, 2390, 65 L.Ed.2d 392, 393, 403 (1980); Lockett v. Ohio, 438 U.S. 586, 604-05, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973, 989-90 (1978); Coker v. Georgia, 433 U.S. 584, 598, 97 S.Ct. 2861, 2869, 53 L.Ed.2d 982 (1977); Gardner v. Florida, 430 U.S. 349, 357-58, 97 S.Ct. 1197, 1204-05, 51 L.Ed.2d 393, 402 (1977); Gregg v. Georgia, 428 U.S. 153, 187-88, 96 S.Ct. 2909, 2931, 49 L.Ed.2d 859 (1976); Furman v. Georgia, 408 U.S. 238, 287-89, 306, 92 S.Ct. 2726, 2751, 3752, 3760, 33 L.Ed.2d 346, 376-78 (1972) (Brennan, J., and Stewart, J., concurring).

B.
A comparable principle recognized in this state is that of heightened appellate scrutiny of criminal trials which have resulted in imposition of the sentence of death. The idea has roots deep in our past. See, e.g., Russell v. State, 185 Miss. 464, 469, 189 So. 90, 91 (1939). It received its modern expression in Irving v. State, 361 So.2d 1360 (Miss. 1978) where we wrote
We recognize that thoroughness and intensity of review are heightened in cases where the death penalty has been imposed. [citation omitted] What may be harmless error in a case with less at stake becomes reversible error when the penalty is death. *1313 361 So.2d at 1363. Other cases recognizing the principle, beginning with the most recent, include Williamson v. State, 512 So.2d 868, 872 (Miss. 1987); Faraga v. State, 514 So.2d 295, 309 (Miss. 1987); Stringer v. State, 500 So.2d 928, 931 (Miss. 1986); Smith v. State, 499 So.2d 750, 756 (Miss. 1986); West v. State, 485 So.2d 681, 688 (Miss. 1985); Pinkton v. State, 481 So.2d 306, 308 (Miss. 1985); Fisher v. State, 481 So.2d 203, 211 (Miss. 1985); Fuselier v. State, 468 So.2d 45, 50 (Miss. 1985); Jones v. State, 461 So.2d 686, 690 (Miss. 1984); Moffett v. State, 456 So.2d 714, 721 (Miss. 1984); Billiot v. State, 454 So.2d 445, 454 (Miss. 1984); Neal v. State, 451 So.2d 743, 750 (Miss. 1984); Williams v. State, 445 So.2d 798, 810 (Miss. 1984); Laney v. State, 421 So.2d 1216, 1217 (Miss. 1982).

C.
This Court hardly stands alone among state courts of last resort in recognizing that death is different. In many other jurisdictions we find the same careful approach to appellate review of capital cases, although on occasion the juridical logic offered in support appears fuzzy.
Because death is "profoundly different," California courts for a number of years have applied a rule that any substantial error in the penalty phase is deemed to have been prejudicial. People v. Robertson, 188 Cal. Rptr. 77, 96, 33 Cal.3d 21, 54, 655 P.2d 279, 298 (1982). The Utah Supreme Court has stated that "scrupulous care must be exercised by the state in capital cases in both the guilt-determining and penalty phases in presentation of evidence and argument because of the acknowledged uniqueness of the death penalty." State v. Brown, 607 P.2d 261, 271 (Utah 1980). See also State v. Windsor, 110 Idaho 410, 716 P.2d 1182, 1193 (1985); State v. Johnson, 24 Ohio St.3d 87, 494 N.E.2d 1061, 1067 (1986); Commonwealth v. Moody, 476 Pa. 223, 382 A.2d 442, 446 (1977); State v. Martin, 303 N.C. 246, 278 S.E.2d 214, 219 (1981); State v. Timmons, 192 N.J. Super. 141, 469 A.2d 46, 47 (1983); State v. White, 395 A.2d 1082, 1085 (Del. 1978); District Attorney for Suffolk District v. Watson, 381 Mass. 648, 411 N.E.2d 1274, 1286 (1980).
The California Supreme Court, in People v. Frank, 214 Cal. Rptr. 801, 38 Cal.3d 711, 700 P.2d 415, 424 n. 3 (1985), stated that "on an appeal from a judgment imposing the penalty of death, a technical insufficiency in the form of an objection will be disregarded and the entire record will be examined to determine if a miscarriage of justice resulted. [citation omitted] [This] rule is even more relevant today in light of the fact that death is `profoundly different from all other penalties.'" "Indeed" the court continues, "this court recently cited [the same rule] in support of its premise that in capital cases it will review errors even when defense counsel has failed to complain of them on appeal. (People v. Easley (1983) 34 Cal.3d 858, 864, 196 Cal. Rptr. 309, 671 P.2d 813)."
The Nevada Supreme Court, "consistent with the concept of heightened review" will examine errors not objected to previously. See Milligan v. State, 101 Nev. 627, 708 P.2d 289, 294, 296 (1985).
Of states which have expressly renounced or relaxed the contemporaneous objection rule in capital cases, South Carolina is in the vanguard with its in favorem vitae doctrine. That doctrine is the state's only exception to the contemporaneous objection rule. State v. Vanderbilt, 287 S.C. 597, 340 S.E.2d 543, 544 (1986). See also State v. Adams, 279 S.C. 228, 306 S.E.2d 208, 215 (1983) ("we accept all argument in favorem vitae") and State v. Goolsby, 275 S.C. 110, 268 S.E.2d 31, 39 (1980).
Louisiana has a more practical reason for addressing errors to which no objection was made below. In State v. Hamilton, 478 So.2d 123, 127 n. 7 (La. 1985), the court stated that it does so to "determine whether the error `rendered the result unreliable' thus avoiding later consideration of the error in the context of ineffective assistance of counsel." However, this motive was not mentioned in State v. Thomas, 427 So.2d 428, 433 (La. 1982) in which it was written:
Because the penalty of death is qualitatively different from any other sentence, *1314 capital cases receive heightened scrutiny from this court and we conduct an independent review, regardless of the failure of defense counsel to object to possible error, to determine whether any improper factors contributed to the jury's recommendation of the death penalty. State v. Sonnier, 379 So.2d 1336, 1371 (La. 1980) (on rehearing); see State v. David, 425 So.2d 1241 (La. 1983); State v. Watson, 423 So.2d 1130 (La. 1982); see also State v. Culberth, 390 So.2d 847 (La. 1980).
Mississippi is not alone in recognizing that the cumulative effect of errors may require reversal. In People v. Lucky, 41 Cal.3d 315, 221 Cal. Rptr. 880, 710 P.2d 959, 979 (1985), the California Supreme Court stated:
Each of these errors relates to a significant legal issue; each contains a small but real possibility of affecting the result. When the cumulative effect of all the errors is considered the likelihood that one or more played a part in leading the jury to return a death verdict impels the conclusion that the penalty procedures were clouded by substantial error.
The Tennessee Supreme Court looks at cumulative effect when analyzing instances of prosecutorial misconduct. State v. Buck, 670 S.W.2d 600, 609 (Tenn. 1984).
As does Nevada. Collier v. State, 101 Nev. 473, 705 P.2d 1126 (1985). Florida has held that "we may look to the `cumulative effect' of non objected to errors in determining whether substantial rights have been affected." Pope v. Wainwright, 496 So.2d 798, 801 n. 1 (Fla. 1986). See also State v. Martin, 101 N.M. 595, 686 P.2d 937, 943 (1984).
That this approach on the part of our sister states is not of recent vintage may be seen by a perusal of the cases discussed in my separate opinion in Hill v. State, 432 So.2d 427, 446-47 (Miss. 1983) (Robertson, J., dissenting).

D.
But what is the juridical content of "death is different?" How ought judges administer that content in specific cases? We are not of one mind on the point, nor have we spoken with clarity.
One red herring may be quickly dispatched. The rules themselves do not change as the penalty of death is sought. Neither the contemporaneous objection rule nor any other rule of procedure or substance becomes metamorphosed into something more favorable to the capital defendant. Any contrary thought may be safely branded error.
Beyond its intuitive factual plausibility, death-is-different derives from two points about the nature of law. First, law is not an end but a means to the end of a society in which we should want to live. Features of that society I have thought widely accepted include unconditional reverence for life, procedural fairness and giving one the benefit of doubt in proportion to the consequences of error discounted by their probability. As law is a purposeful enterprise subjecting human conduct to the governance of rules, Warren County Board of Education v. Wilkinson, 500 So.2d 455, 460 (Miss. 1986), so its rules should not be enforced so that their purpose be thwarted. Nor are courts mandated to apply, mechanically, the open textured rules that constitute our law to cases beyond the reach and concern of those purposes.
Second, rules of law being made by man are incapable of perfection. Because of our relative ignorance of fact and the relative indeterminacy of aim, Hart, The Concept of Law 125 (1961), we make rules which include that we should wish excluded and which exclude that we would prefer included. See Kennedy, Form and Substance In Private Law Adjudication, 89 Harv.L.Rev. 1685, 1695-97 (1976). The judicial process is not to be confused with Newton's thermodynamics or Einstein's gravity (although quantum mechanics does present an attractive physical analogue). Law makers and law appliers are prone to err, the consequences of which we may not responsibly ignore.
We are of necessity called to (imperfectly) sensitive application of the law. To be sure, as internal participants within the *1315 system we have no discretion other than as the law allows. Educational Placement Services v. Wilson, 487 So.2d 1316, 1318 (Miss. 1986). But that which we have we should exercise by reference to systemic purposes, those undergirding the specific rule, the penumbra of doubt inherent in all rules, the penchant for indeterminacy in all of our rule making efforts, our bent for error in application, and the discounted gravity of consequences. Death is the harm in the harmless error calculus.
In death penalty cases we give flesh to these ideas in quite specific ways, as noted above. We consider trial errors for their cumulative impact. Russell v. State, 185 Miss. 464, 469, 189 So. 90, 91 (1939). We apply our plain error rule with less stinginess. Augustine v. State, 201 Miss. 731, 740, 29 So.2d 454 (1947). Enforcement of our contemporaneous objection rule is relaxed. Culberson v. State, 379 So.2d 499, 506 (Miss. 1979); Toney v. State, 298 So.2d 716, 721 (Miss. 1974). We resolve serious doubts in favor of the accused. Gambrell v. State, 92 Miss. 728, 736, 46 So. 138 (1908). And, as indicated above, we afford heightened scrutiny on appeal. Translated, what becomes harmless error in a case with less at stake becomes reversible error when the penalty is death, Irving v. State, 361 So.2d 1360, 1363 (Miss. 1978), as death really is different.

III.
Today's question is whether the contemporaneous objection rule should be enforced to bar Jones' Batson claim. The relevant considerations[1] are these:
(1) The rule's content excludes this case. Batson-specific rights had no existence on April 3, 1985, though the law be regarded not as that which is but instead as a continuous process of becoming. The contemporaneous objection rule contemplates a realistic opportunity to assert a right which exists at that time.
(2) One purpose of the rule is the prevention of sandbagging. A litigant should not be allowed to lie silently in the bushes and strike only after his adversary has lost the opportunity for effective defense. But how may one sandbag an opponent regarding a rule the content of which is wholly unknown? Even if Jones and his counsel were disposed to sandbag (and exposure to the penalty of death certainly provides the incentive), the then-unforeseeable content of the Batson right made defense sandbagging quite simply impossible.
(3) The interest of judicial efficiency ordinarily mandates that a party have but one meaningful opportunity to assert a right. Where, as here, the trial judge on April 3, 1985, had no authority but to overrule any Batson claim, assuming counsel possessed the prescience to know how to assert one, no such meaningful opportunity has been afforded.
(4) The judicial efficiency interest ordinarily mandates a meaningful trial court opportunity to hear and finally resolve points, to the end that precious appellate judicial resources may be preserved. Timely assertion of rights in trial courts enables those courts to resolve matters and correct or avoid errors that might otherwise necessitate costly appellate review and retrials. Since the law as it existed on April 3, 1985, recognized rights not remotely resembling those fashioned a year later in Batson, this efficiency interest fails. The point is driven home by a brief look at Williams v. State, 507 So.2d 50, 52 (Miss. 1987); and Harper v. State, 510 So.2d 530, 532 (Miss. 1987), where the said-to-be-necessary contemporaneous objection was made. The appellate result: remand for a Batson hearing, precisely the sort of inefficient result the rule is designed to prevent. Enforcement of the contemporaneous objection rule simply makes no sense in a change of law context. At the time the objection should have been made, April 3, 1985, the trial judge was prohibited by this Court's reading of Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) from taking any action which may have avoided the costly rehearing.[2]
(5) In Williams and Harper, we afforded the prosecution a "second bite" at the *1316 Batson apple on grounds it could not fairly be held to have foreseen what the Supreme Court would wrought. On what principle of even-handed justice may we do an about face and hold a similarly defaulting defendant now barred?
(6) If there be a reasonable probability that the prosecuting attorney in fact used peremptory challenges to exclude black persons from the jury in a Batson-violative manner, the systemic policies mentioned at the outset mandate that we find this out before Gregory Montecarlo Jones' date with the state's executioner.
We emphasize again that we do not change the content of the contemporaneous objection rule. Realism requires recognition that it is an open textured rule. I have found that the rule has no content mandating enforcement of the procedural bars against assertion of rights non-existent at the moment of procedural opportunity, nor does such enforcement enhance or vindicate any of the rules policies. If nothing else, this is an appropriate case for plain error treatment. See Rule 6(b), Miss.Sup. Ct.Rules. For these reasons, staying within the rule, I would resolve the doubt for Jones, for death is different.

IV.
A less than proud page of this state's history is an appropriate postscript. Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936) is one of the great cases in American criminal constitutional procedural jurisprudence. The case concerned confessions coerced from three black youths in a Kemper County murder case and has been ably chronicled by Richard C. Cortner in A "Scottsboro" Case In Mississippi (1986). The three had been convicted and sentenced to be hanged. This Court affirmed. Brown v. State, 173 Miss. 542, 158 So. 339, 161 So. 465 (1935).[3]
Before the Supreme Court of the United States, the State then as now invoked procedural bars and argued that the defendants should hang because their lawyer had not made the right objection at the right time  there really is nothing new under the sun. Cortner tells this story of oral argument in the Supreme Court.
William Maynard, [the Assistant Attorney General arguing for affirmance] pointed out that there had been no motion to exclude the confessions at the trial as required by Mississippi procedure, but he too was interrupted by one of the justices. Should Brown, Shields, and Ellington be condemned to die "because their lawyer neglected to say, `I object'?" the justice asked Maynard. Maynard was speechless in the face of the question, feeling that if he replied in the negative, he would be conceding his case, while if he answered "yes" to the question, he would appear to be heartless. Maynard instead of answering dropped his head in silence, and the justice said, "I thought so."
Cortner, supra, at 129. The Supreme Court reversed and the rest is history.
PRATHER, SULLIVAN and ANDERSON, JJ., join in this dissent.
NOTES
[1] The facts are practically identical on both trials. They are set out in more detail in Jones v. State, 461 So.2d 686 (Miss. 1984), at 686-689, 696, 697-98.
[1] My anti-stacking view is not without its supporters. State v. Rust, 197 Neb. 528, 250 N.W.2d 867, 874 (1977); Ashlock v. State, 367 So.2d 560, 561 (Ala.Cr.App. 1978); and Provence v. State, 337 So.2d 783, 786 (Fla. 1976).
[1] Batson notes that "We decline, however, to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges. In this case, petitioner made a timely objection ..." Batson, 476 U.S. at 99, 106 S.Ct. at 1725, 90 L.Ed.2d at 90.
[1] See my dissenting opinion in Thomas v. State, supra, for further elaboration.
[2] The majority's suggestion that Jones should have made a Swain objection is so much sophistry. First, the record reflects that on April 3, 1985, Jones didn't have a Swain objection. He did, however, have a Batson claim, but he had no way of knowing that fact. Second, prior to April 3, 1985, this Court had consistently rejected, if not ridiculed, Swain objections. See Belino v. State, 465 So.2d 1043, 1045 (Miss. 1985) and other cases cited in my Thomas dissent. Third, the trial judge on his oath would have been obligated to overrule any Swain objection. So seen, the majority condemns Jones because of his lawyer's failure to make a vain and wholly useless objection.
[3] On direct appeal Justice W.D. Anderson dissented, Brown, 173 Miss. at 560-63, 158 So. at 343-44, and on denial of suggestion of error, Justice V.A. Griffith issued an even more eloquent protest, Brown, 173 Miss. at 572-79, 161 So. at 470-72. Chief Justice Charles Evans Hughes once said:

"A dissent in a court of last resort is an appeal to the brooding spirit of the law, to the intelligence of a future day, when a later decision may possibly correct the error into which the dissenting judge believes the court to have been betrayed."
Hughes saw to it that Justices Anderson and Griffith did not have to wait long for their future day. Brown, 297 U.S. at 279-87, 56 S.Ct. at 462-66, 80 L.Ed. at 683-88.